## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 04 2020, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kyle D. Gobel
Collier Gobel Homann, LLC
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEE

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of O.A. (Minor Child) and Z.O. (Father);

Z.O. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

June 4, 2020

Court of Appeals Case No.
19A-JT-2788

Appeal from the Fountain Circuit Court

The Honorable Stephanie Campbell, Judge

Trial Court Cause No.
23C01-1904-JT-42

**May, Judge.**

[1] Z.O. ("Father") appeals the involuntary termination of his parental rights to O.O. ("Child"). He argues the trial court's findings do not support its conclusions that the conditions under which Child was removed from Father's care would not be remedied; that the continuation of the parent-child relationship posed a threat to the well-being of Child; and that termination was in Child's best interests. We affirm.

# Facts and Procedural History

[2] Child was born to A.S. ("Mother")[1] on August 22, 2016. Mother had primary custody of Child. On October 31, 2017, DCS filed a petition alleging Child was a Child in Need of Services because two members of Mother's household had overdosed on illegal drugs and Child tested positive for methamphetamine via hair follicle screen. At the initial hearing the same day, Mother and Father denied the allegations in the CHINS petition, and Child remained in Mother's care.

[3] On November 7, 2017, DCS filed a request to remove Child[2] from Mother's care based on Mother's positive drug screen for methamphetamine. The trial court granted DCS's request and ordered Child removed from Mother's care and placed in foster care. Child was not placed with Father because he did not

---

[1] Mother voluntarily relinquished her parental rights to Child and does not participate in this appeal.

[2] Based on the trial court's order it would seem Mother had another child who was also removed from her care at this time. However that child is not at issue in this appeal.

have appropriate housing and he tested positive for marijuana and Xanax, for which he did not have a prescription. On December 15, 2017, the trial court held a fact-finding hearing on DCS's CHINS petition and both parents admitted Child was a CHINS. The trial court adjudicated Child as such on January 8, 2018.

[4] The trial court held a dispositional hearing on January 9, 2018, and on June 22, 2018, ordered Father to, among other things: contact the Family Case Manager ("FCM") every week; enroll in any program recommended by the FCM or any other service provider within thirty days of that recommendation; keep all appointments with FCM and service providers or give advance notice and good cause for the missed appointment; maintain suitable, safe, and stable housing; secure and maintain a legal and stable source of income; refrain from using illegal substances or prescription medication for which he did not have a prescription; obey the law; submit to random drug screens; complete parenting and substance abuse assessments and follow all recommendations therefrom; and visit with Child. Father was considered the primary possibility for placement and reunification because Mother was "in and out of jail, continued heavy drug use and [did] not visit[] the Child even from the onset of the case." (App. Vol. II at 16.)

[5] Father participated in home-based case management from February 2018 until July 2018; he was discharged from the service in September 2018. Father regularly attended supervised visits with Child from November 2017 until August 8, 2018; Father has not seen Child since August 8, 2018. Father

submitted random drug screens from November 2017 to May 2018. In May 2018, the service provider suspended his drug screens because he failed to appear for three consecutive screens. The FCM restarted Father's drug screens at least four times and stopped doing so in July 2018. Father regularly tested positive for marijuana. Father completed a substance abuse assessment in April 2018, but he did not engage in the recommended treatment. Father did not engage in individual therapy despite being diagnosed with bipolar disorder. Father also did not contact the FCM from August 2018 to March 2019.

[6] Based on Father's noncompliance with services, the trial court changed the permanency plan from reunification to termination of parental rights and adoption. DCS filed a petition to terminate Father's parental rights on April 8, 2019. The trial court held fact finding hearings on June 28 and July 29, 2019. On November 18, 2019, the trial court terminated Father's parental rights to Child.

# Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*,

717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[9] To terminate a parent-child relationship in Indiana, DCS must allege and prove:

> (A) that one (1) of the following is true:
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child

being alleged to be a child in need of services or a
delinquent child;

(B)    that one (1) of the following is true:

    (i)    There is a reasonable probability that the conditions
that resulted in the child's removal or the reasons
for placement outside the home of the parents will
not be remedied.

    (ii)    There is a reasonable probability that the
continuation of the parent-child relationship poses a
threat to the well-being of the child.

    (iii)    The child has, on two (2) separate occasions, been
adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment
of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. "[I]f the State fails to prove any one of these statutory elements, then it is not entitled to a judgment terminating parental rights." *Id.* at 1261. Because parents have a constitutionally protected right to establish a home and raise their children, the State "must strictly comply with the statute terminating parental rights." *Platz v. Elkhart Cty. Dep't of Pub. Welfare*, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994).

[10] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98,

102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208. Father does not challenge the trial court's findings, and thus they stand proven. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

## 1. Reasonable Probability Conditions Not Remedied

[11] The juvenile court must judge parents' fitness to care for their children at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[12] Regarding whether the conditions under which Child was removed would be remedied, the trial court found:

> 6. Father has made minimal effort to complete court-ordered and recommended services.
>
> 7. Father participated in home-based case management from February 2018 until July 2018 before he stopped engaging in this service and was unsuccessfully discharged in September 2018. The goals of home-based case management were to assist Father in obtaining and maintaining stable housing and employment, maintaining sobriety and obtaining community resources.
>
> 8. Father participated very regularly in supervised visits with [Child] from November 2017 until August 8, 2018. Father

received visitation twice per week for two to three hours each visit. The Court encouraged Father to engage in the services and maintain stable housing so that his visits could be increased and [a] trial home visit could begin. Father did well at visits, parenting appropriately and engaging with [Child]. The visit supervisor decreased supervision and the same was ordered upon Father's engaging in services to ensure steps toward sobriety and stability.

* * * * *

13. From November 2017 to May 2018, Father participated in random drug screens through Redwood. The FCM testified that Redwood suspends an individual's screens when three consecutive screens were missed and that she had to restart Father's screens at least four times from May 2018 to July 2018. The FCM testified that she would receive an email from Redwood when Father's screens were suspended and that he would immediately respond to said email requesting to reinstate Father's screens. The FCM testified that the last time she reinstated Father's screens through Redwood was in July 2018. Father no showed for screens from May 25, 2018 to July 1, 2018.

14. The FCM testified that Redwood will send a collector to the individual and that the collector will meet the individual at a location desired by the individual. Around the time Father became non-compliant with screens, he informed the FCM that he was now working in construction in Covington, Indiana, and that he was not permitted to screen on the job site. As a result, the FCM offered to start coming to Father's home in Covington, Indiana, to screen him. The FCM testified that Father never indicated whether he would prefer to screen through Redwood or for the FCM to come screen him and that is why she continued to reinstate his screens through Redwood. While Father was completing random drug screens, the FCM testified that Father continued to test positive for THC.

15. Father stated he completed a substance abuse assessment in January 2018 but it was later found that he had not. Father did complete a substance use assessment in April 2018, after the first referral was cancelled due to non-compliance. The recommendation from the assessment was IOP and relapse prevention. Father did not begin or complete either recommendation. At the time of the conclusion of the termination fact finding hearing, Father has [sic] not engaged in any form of substance use treatment.

16. Father has been diagnosed with bi-polar and testified that he was previously prescribed Metadate CE, Zoloft for depression and bi-polar, Xanax for anxiety and Clonidine for insomnia. Father testified that he is not receiving mental health treatment and has not been on medication since he was 18 years old but claims this is because he did not have medical insurance and was denied Medicaid. Despite Father testifying that his lack of participation in services was due to him not being in the right state of mind and "things spiraling out of control," he stated that he does not believe being off his medications affects him. The FCM, after receiving the results of Father's substance use/mental health assessment, did make a referral to Valley Oaks in May 2018 for individual therapy to address issues of depression and past suicidal ideation. Kristina Stewart from Valley Oaks, who completed [F]ather's substance use/mental health assessment testified that she was qualified to work with Father on mental health issues and that the facility has a psychiatrist who could prescribe psychiatric medications. Father was ordered to follow the recommendations of the mental health assessment to address his bi-polar and depression. Father never engaged in individual therapy.

17. Father has not made any progress at this point towards reunification due to his noncompliance with services and continuing to test positive for THC. At a hearing on April 23, 2019, Father tested positive for methamphetamine and THC on a

hair screen.  Although Father denied methamphetamine use, he admitted to still using marijuana.

* * * * *

24.  Since [Child] was removed, Father has changed residences at least four times and changed employment approximately five times.  There have been significant periods of time where Father's location was unknown.  At the time of the conclusion of the termination fact finding hearing, Father testified that he was unemployed, did not have transportation and was living in an unconverted garage of his brother's home.  Father further testified that he was unaware of any community resources that could assist him in supporting himself or [Child].

(App. Vol. II at 16-19.)

[13]   Father argues the trial court erred when it determined the conditions under which Child was removed would not be remedied based his testimony regarding his "motivation and his specific plans to become stable and compliant" at the termination hearing.  (Br. of Appellant at 17.)  However, based on the amount of time Father has already had to participate in services and his failure to have done so thus far, we conclude we cannot leave Child in permanency limbo while giving Father another chance to participate in services and visitation.  *See In re Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) (appellate court "unwilling to put [child] on shelf until [parents] are capable of caring for her appropriately"); *see also Baker v. Marion Cty. OFC*, 810 N.E.2d 1035, 1040 n.4 (Ind. 2004) (limitations on trial court's ability to approve long-term foster care are designed to ensure a child does not "languish, forgotten, in

custodial limbo for long periods of time without permanency") (quoting *In re Priser*, No. 19861, 2004 WL 541124 at *6 (Ohio Ct. App. March 19, 2004)). The trial court's findings support its conclusion there is a reasonable probability the conditions resulting in Child's removal will not be remedied.[3]

## 2. Best Interests of Child

In determining what is in Child's best interests, a trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Child's best interests. *In re J.S.*, 906 N.E.2d at 236.

Regarding Child's best interests, the trial court found:

---

[3] Because we hold the trial court's findings supported its conclusion that the conditions under which Child was removed from Father's care would not be remedied, we need not consider Father's argument regarding whether the continuation of the parent-children relationships poses a risk to the Child's well-being. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999) (because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the court need find only one requirement to terminate parental rights), *reh'g denied, trans. denied, cert. denied* 534 U.S. 1161 (2002).

18. Father has not seen nor had any contact with [Child] since August 8, 2018. Father has been represented by counsel at all stages of the CHINS proceeding. Since August 8, 2018 he has made no effort or attempts to contact the FCM, who has been assigned to the case since November 2017, to re-engage in services or to resume visitations with [Child]. Prior to [Child's] removal and the commencement of the CHINS case, Father only visited with [Child] sporadically.

* * * * *

23. CASA [Court Appointed Special Advocate] Elizabeth Daily, who has been appointed to the underlying CHINS case since November 2017, testified that she believes termination to be in [Child's] best interest and that she does not believe Father has shown an ability to adequately care for [Child].

25. [Child] has been in care for the last twenty (20) months. Father has had sufficient time and opportunities to make improvements and has not made any. Children need stability and continuity and Father has not shown that he is capable of providing those things or that he can maintain sobriety. Father demonstrated that he has the ability to parent [Child]. However, his lack of engagement or participation in the case for twelve months preceding the Fact-Finding in this matter establishes that he is not committed to being a parent for [Child]. Father's lack of engagement or commitment to [Child] seriously affects her right to permanency and stability. Father has failed to commit to being a full time parent or demonstrate even the minimum commitment to parenting her throughout the CHINS case.

(App. Vol. II at 19-20.)

Father argues termination of his parental rights is not in Child's best interests because he "has potential to be an effective Father [based on] Father's obvious parenting skills and his level of motivation to improve[.]" (Br. of Appellant at 19.) However, as stated earlier in our analysis, Father has thus far not availed himself of the services offered, and Child cannot wait indefinitely for him to do so. Further, the trial court is not obligated to consider Father's future plan for improvement. *See In re B.D.J.*, 728 N.E.2d 195, 202 n.1 (Ind. Ct. App. 2000) (parent's "future plans were not evidence on which the trial court could base its opinion"). Based on the trial court's findings regarding the other required factors coupled with the testimony of the CASA and other care providers, the trial court's findings support its conclusion that it is in Child's best interest to terminate Father's parental rights. *See In re T.F.*, 743 N.E.2d 766, 776 (Ind. Ct. App. 2001) (testimony of guardian ad litem and caseworker sufficient to support trial court's findings and conclusion that termination was in child's best interests), *trans. denied*.

# Conclusion

The trial court's findings support its conclusions that the conditions under which Child was removed would not be remedied and that termination of Father's parental rights was in Child's best interests. Accordingly, we affirm the termination of Father's parental rights.

Affirmed.

Robb, J., and Vaidik, J., concur.